## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

RHONDA KLEIN,

          Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

No. C16-1016-LTS

**REPORT AND RECOMMENDATION**

_____

    The claimant, Rhonda Klein (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act).  Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

    For the reasons that follow, I recommend the District Court affirm the Commissioner's determination that claimant is not disabled, and enter judgment against claimant and in favor of the Commissioner.

## I.    *BACKGROUND*

    Claimant filed her application for DIB on March 17, 2013, alleging disability beginning September 17, 2012.  AR 17.[1]  Claimant alleges she became disabled when she was forty-six years old.  AR 176.  Claimant completed high school and has a certified

_____

[1] "AR" refers to the administrative record below.

nursing assistant (CNA) credential. AR 230. She has past relevant work as a CNA, bus driver, and motor vehicle dispatcher. *Id*.

On May 29, 2013, the Commissioner denied claimant's application, and on July 22, 2013, denied her claim upon reconsideration. AR 17. On November 13, 2014, ALJ Jo Ann L. Draper held a hearing at which claimant and a vocational expert testified. AR 36-63. On December 23, 2014, the ALJ found claimant was not disabled. AR 17-30. The Appeals Council denied claimant's request for review. AR 5-7. Thus, the ALJ's decision became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On May 13, 2016, claimant filed a complaint in this Court. Doc. 2. The parties have since briefed the issues, and on November 21, 2016, the Honorable Leonard T. Strand, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of

2

opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves significant mental or physical activities. "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. "An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

3

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still perform past relevant work, then the claimant is considered not disabled. Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. A claimant's "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

4

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step One, the ALJ found claimant had not been engaged in substantial gainful activity since September 17, 2012. AR 19.

At Step Two, the ALJ determined claimant had the following severe impairments: "brachial plexus palsy[2] on the left and degenerative disc disease of the lumbar and cervical spine." *Id*. The ALJ noted that she also gave consideration to the effects of obesity with regard under the listings and also with respect to determining claimant's residual functional capacity. AR 19-20. The ALJ recognized that "[o]ther impairments are mentioned in the record from time to time, but they did not cause significant limitations in functioning, or did not last for a continuous period of 12 months." AR 20.

---

[2] Also known as Erb's Palsy, this is a birth defect which causes arm weakness and loss of motion. AR 21, 26. It is important to note, therefore, that this birth defect did not prevent claimant from working in the past. There is some medical evidence suggesting that her strength and loss of motion may have decreased to some degree during the period under review here. As will be noted, the ALJ included limitations in the RFC related to this condition. The focus of claimant's appeal, therefore, is limited to the impairments related to her cervical spine.

5

At Step Three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments.  AR 20.

At Step Four, the ALJ determined claimant's RFC.  The ALJ found that claimant has the residual functional capacity to perform sedentary work involving lifting and carrying ten pounds occasionally and five pounds frequently.  AR 20.  The ALJ found claimant's RFC required the additional following restrictions:

> The claimant can stand or walk up to two hours of an eight hour workday. She can sit for six hours of an eight hour workday.  She would need to change postural position approximately every 30 minutes, which would entail rising from a seated position to stand or walk two to three minutes before returning to a seated position, without being off task and without leaving the work area.  The claimant can only occasionally climb, balance, stoop or kneel, but she could never crouch or crawl.  She can never reach overhead with the left upper extremity.  The claimant can have no more than occasional exposure to extreme cold.  She can never clime ropes, ladders or scaffolds.

AR 20.  Based on this RFC assessment, and still at Step Four, the ALJ found claimant was capable of performing past relevant work as a dispatcher of motor vehicles. Accordingly, the ALJ never reached Step Five and found claimant had not been under a disability from September 17, 2012, through the date of the ALJ's decision.  AR 29.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial

evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 789 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

7

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (citations and internal quotation marks omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (citation omitted)).

## V.     DISCUSSION

Claimant alleges the ALJ's residual functional capacity assessment was flawed for two reasons:

1.     The ALJ failed to properly evaluate the opinions of claimant's treating orthopedic surgeon. Doc. 13, at 2-8.

2.     The ALJ failed to properly assess claimant's subjective complaints and incorporate the functional limitations she claimed into the RFC. Doc. 13, at 8-14.

I will address each of these arguments in turn.

### A.     The ALJ's Evaluation of Claimant's Treating Orthopedic Surgeon

Claimant argues that the ALJ gave insufficient weight to the opinion of claimant's treating orthopedic surgeon, Michael Chapman, M.D. Doc. 13, at 3-8. Claimant argues that the ALJ: (1) failed to articulate how much weight she gave Dr. Chapman's opinion; (2) improperly found Dr. Chapman issued an opinion on an issue reserved to the Commissioner; (3) failed to consider factors for reviewing evidence from medical

8

sources, including the length and nature of treatment, qualifications, and how well the opinion is supported by other records; (4) improperly found Dr. Chapman's opinion relied upon claimant's subjective reports; and (5) improperly gave great weight to non-examining state agency reviewing physicians. *Id*. The Commissioner argues that the ALJ considered Dr. Chapman's opinion, gave some weight to some of his opinion, and properly discounted other portions of his opinion. Doc. 14, at 5-15.

On multiple occasions between April 2014, and November 2014, claimant saw Dr. Chapman, a board-certified orthopedic surgeon, for back pain. AR 426-88, 623-42.[3] Ultimately, on November 2, 2014, Dr. Chapman completed a physical residual functional capacity questionnaire. Dr. Chapman found claimant's prognosis was "fair." AR 619. Dr. Chapman opined that claimant's pain interfered "constantly" with the "attention and concentration needed to perform even simple work tasks." AR 620. Dr. Chapman did find claimant could tolerate moderate stress in the workplace. *Id*. He also determined claimant could walk a half-block without severe pain, could sit for 30 minutes at a time, and could sit and stand/walk for a maximum of about 2 hours each. *Id*. Dr. Chapman opined that claimant must walk every 30 minutes for about five minutes. AR 620-21. Dr. Chapman opined that claimant must be able to shift positions at will and rest 15 to 30 minutes before returning to work. AR 621.

---

[3] Dr. Chapman had seen claimant two years earlier as well in relation to a motor vehicle accident. AR 619.

### 1. The Weight the ALJ Gave to Dr. Chapman's Opinion

The ALJ did not explicitly indicate what weight she gave to Dr. Chapman's opinion. AR 24-26. When evaluating medical opinion evidence, an ALJ must explain in the written decision the weight given to any opinions from medical sources. *See* 20 C.F.R. § 404.1527(e)(2)(ii). Not only is this necessary to comply with the regulations, but it is also necessary to assist the Court in its review of the ALJ's decision. *See Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). Thus, it can be reversible error where an ALJ fails to clearly articulate the weight given to a medical source's opinion. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (reversing and remanding ALJ's decision where ALJ did not make it clear the weight assigned to the opinion of an examining physician). Remand is not always required, however, where the extent to which the ALJ considered the opinion is otherwise apparent in the ALJ's decision and RFC restrictions. *See Alcott v. Colvin*, No. 4:13-CV-01074-NKL, 2014 WL 4660364, at *5 (W.D. Mo. Sept. 17, 2014) (finding remand unnecessary where ALJ discussed the medical opinion, ALJ's RFC determination was largely consistent with limitations in the medical source's opinion, and the reason for not adopting one limitation was adequately explained).

In this case, I find remand unnecessary, even though the ALJ failed to explicitly articulate the weight she assigned to Dr. Chapman's opinion, because the extent to which the ALJ considered and factored in Dr. Chapman's opinion can be discerned from the record. Further, the ALJ's residual functional capacity assessment in many ways incorporated large portions of Dr. Chapman's opinion. In reviewing the ALJ's decision and her RFC assessment, I agree with the Commissioner that the ALJ gave some weight to some of Dr. Chapman's opinion. The ALJ discussed Dr. Chapman's treatment of and opinion regarding claimant at some length. AR 24-26. The ALJ noted that in Dr.

10

Chapman's opinion, he found claimant's impairments should result in the following work-related restrictions:

1) Lift less than 10 pounds occasionally;
2) Stand for 10 minutes at a time, for a total of two hours in an eight-hour workday;
3) Sit for thirty minutes at a time for up to two hours out of an eight-hour workday;
4) Periods to walk around every thirty minutes, for up to five minutes at a time;
5) The ability to shift positions at will from sitting, standing and walking;
6) Need to take unscheduled breaks for 15 to 30 minutes at a time;
7) Should rarely twist, stoop or bend, and could occasionally climb stairs.
8) Could never crouch, squat, or climb ladders
9) Could occasionally look down, but frequently turn her head, look up or hold her head in a static position
10) Moderate work stress;
11) Absent more than four days per month.

AR 26. The ALJ's residual functional capacity assessment was largely similar to Dr. Chapman's opinion of appropriate restrictions in many ways.[4] *Id.* The ALJ restricted claimant to lifting and carrying ten pounds occasionally and five pounds frequently. AR 20. The ALJ restricted claimant to standing or walking up to two hours out of an eight-hour day. *Id.* The ALJ found claimant could sit for up to six hours a day, instead of Dr. Chapman's opinion she could only sit for two hours a day. *Id.* The ALJ's assessment

---

[4] The ALJ noted that "certain aspects of the doctor's opinion are, in fact, consistent with the residual functional capacity determined in this decision." AR 26. I find the ALJ's wording awkward, at best; it suggests, as claimant argues, that the ALJ first determined the RFC, and then considered Dr. Chapman's opinion. Nevertheless, I find the order of the ALJ's analysis irrelevant. It is clear the ALJ considered Dr. Chapman's opinion at length and determined claimant's RFC. There is nothing that prohibits an ALJ from formulating a draft RFC based on the record as a whole and then reviewing and adjusting it, as appropriate, in light of a particular source's opinion. However the ALJ performed the analysis, the question before this Court, ultimately, is whether substantial evidence in the record as a whole supports the ALJ's decision.

that claimant would need to change postural positions frequently and be able to stand or walk around for two or three minutes before returning to work is very similar to Dr. Chapman's assessment. *Id*. The ALJ's assessment of claimant's ability to climb, balance, stoop, kneel, crouch or crawl was substantially the same as Dr. Chapman's assessment. *Id*. The ALJ included additional limitations in her assessment that Dr. Chapman did not, including the important limitation regarding claimant's ability to fully use her left arm.

In contrast to Dr. Chapman, the ALJ did not assess claimant as needing limitations on her ability to move her head, a low stress job, or to be absent for four days a month. In my own review of Dr. Chapman's records, I do not find support for this restriction. With regard to the need to be absent from work four days out of every month, Dr. Chapman reached this conclusion by rather vaguely opining that claimant's impairments would likely cause good and bad days, leading to the need for absences. AR 26. Dr. Chapman did not rely on any medical findings, records, or work history in arriving at this conclusion, or explain how he determined the number of days claimant would have to be absent. An ALJ is not required to give any weight to medical opinions when the source does not support them with clinical evidence or analysis based on the medical records or examinations. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

In any event, although the ALJ should have explicitly stated the weight she assigned to Dr. Chapman's opinion, given the similarity between Dr. Chapman's opinion and the ALJ's residual functional capacity assessment, I find it is apparent that the ALJ gave significant weight to Dr. Chapman's opinion, rejecting only a portion of it.

### 2. Whether Dr. Chapman's Opinion Invaded the Commissioner's Province

Claimant alleges "the ALJ improperly found Dr. Chapman's opinion was an opinion on an issue reserved to the Commissioner." Doc. 13, at 4. Dr. Chapman opined that claimant "would not even be able to perform a sedentary job." AR 26. The ALJ noted that a treating physician's opinion, while usually entitled to great weight, is entitled to no weight when it involves an opinion "that claimant is 'disabled,' 'unable to work,' can or cannot perform a past job, meets a Listing or the like." *Id*. In her opinion, the ALJ did not specifically identify which portion of Dr. Chapman's opinion that she felt fell into this category, but Dr. Chapman's opinion that claimant could not perform a sedentary job is the only one I can find that appears applicable.

The ALJ could properly disregard this portion of Dr. Chapman's opinion because it is not a medical opinion; rather, it is opinion regarding employability that is for the Commissioner alone to make. *See*, *e.g.*, *Perkins*, 648 F.3d at 898 (medical source's opinion that claimant was "disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.") (internal quotation marks and citation omitted); *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("[A] treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability.") (citation and internal citation omitted); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."); *Hayes v. Astrue*, No. 2:11-CV-04132, 2012 WL 393406 at *6 (W.D. Mo. Feb. 6, 2012)

13

(finding that the ALJ properly rejected a medical source's opinion that the claimant was limited to sedentary work because that was a determination reserved for the Commissioner).

Accordingly, I do not find the ALJ erred in rejecting Dr. Chapman's opinion as to whether claimant could perform sedentary work because that was not a medical opinion and is a determination reserved for the Commissioner.

### 3. *The ALJ's Consideration of Factors for Reviewing Treating Source Evidence*

Claimant argues that "the ALJ failed to consider the factors for reviewing evidence from medical sources as required by 20 C.F.R. § 404.1527, including length and nature of treatment, qualifications, and how well the opinion is supported by other records." Doc. 13, at 5. The Commissioner counters that the ALJ did consider all of these factors and the record as a whole in assessing Dr. Chapman's opinion. Doc. 14, at 11-15. In a reply brief, claimant describes the Commissioner's defense of the ALJ's decision as a "post hoc rationalization" and the result of "cherry picking" evidence. Doc. 15, at 2.

In my review of the ALJ's decision and the record as a whole, I agree with the Commissioner. The ALJ clearly took into account that Dr. Chapman was an orthopedic surgeon who treated claimant since at least April 2014. AR 24-26. The ALJ also considered not only Dr. Chapman's medical records, but the medical evidence as a whole. AR 21-27. Although the Commissioner's brief does, to some degree, rely on portions of the record not specifically cited by the ALJ in her decision, I do not find it is either a case of post hoc justification or cherry picking of the record. Rather, a review of the record as a whole shows there was substantial evidence supporting a finding that claimant's impairments were not as severe as either she or Dr. Chapman claimed.

14

Although there may be some evidence that may support the opposite conclusion, the ALJ's evaluation of the evidence in this case is sufficiently within the ALJ's zone of choice that this Court should not overturn her decision.

Accordingly, I do not find the ALJ erred in considering factors relevant to the evaluation of Dr. Chapman's opinion.

### 4. Whether Dr. Chapman's opinion relied upon claimant's subjective reports

Claimant argues "the ALJ erred in rejecting Dr. Chapman's opinion because it was allegedly based upon" an uncritical acceptance of claimant's subjective complaints. Doc. 13, at 6. Claimant argues "there is nothing in the record to indicate Dr. Chapman based his opinion on anything other than his long term treating relationship, his expertise, and the extensive objective evidence in the file that Dr. Chapman continually reviewed during the treating relationship." *Id*. The Commissioner argues that "Dr. Chapman's 'opinion' mirrors plaintiff's subjective statements." Doc. 14, at 8.

In her decision, the ALJ noted it "appears the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 26. First, to be clear, I do not find the ALJ "rejected" Dr. Chapman's opinion as claimant alleges. As noted above, the ALJ's residual functional capacity assessment is substantially similar to Dr. Chapman's opinion of claimant's limitations. Second, I find support in the record for the ALJ's conclusion that Dr. Chapman appeared to have accepted claimant's subjective complaints uncritically. As the Commissioner points out, the limitations Dr. Chapman listed mirror claimant's self-reported limitations. AR 619-22. An ALJ may properly discount the weight afforded a medical source's opinion when

it appears it was largely based on the claimant's subjective complaints. *See Kirby*, 500 F.3d at 709 (holding that an ALJ "was entitled to give less weight to [a medical source's] opinion, because it was based largely on [the claimant's] subjective complaints rather than on objective medical evidence.").

Accordingly, I do not find the ALJ erred in discounting Dr. Chapman's opinion when his residual functional capacity assessment mirrors the claimant's self-reported limitations.

### 5. *Whether the ALJ improperly gave great weight to non-examining state agency reviewing physicians*

Although claimant does not explicitly argue the ALJ erred in giving "great weight" to the state agency reviewing physicians' opinions, she does allege the ALJ did not properly evaluate their opinions and argues this makes the ALJ's "dismissal of Dr. Chapman's opinions . . . even more egregious . . . ." Doc. 13, at 6. Claimant alleges the state agency reviewing physicians' opinions "conflict with" Dr. Chapman's opinion, though in what respect claimant does not specifically say. *Id*.

Dr. Marlene Ann Gernes and Dr. Jan Hunter provided opinions in May and July 2013 (respectively) and concluded that claimant was not disabled and was capable of performing light work. AR 64-74, 75-87. It is true that the ALJ's decision reflects little analysis of, or discussion about, these decisions, yet rather perfunctorily assigns them "great weight" with the conclusory statements that they "adequately considered the evidence of record" and their "opinions are internally consistent and consistent with the evidence as a whole." AR 29. It is also true that at the time they rendered their opinions they did not have the benefit of later medical records, particularly Dr. Chapman's records. AR 426-642.

16

Nevertheless, I do not find the ALJ erred in assigning great weight to these opinions. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6P, 1996 WL 374180 (July 2, 1996), at *2; 20 C.F.R. § 404.1527(e)(2)(i) (same). Opinions of non-treating, non-examining sources alone generally do not constitute substantial evidence supporting an ALJ's decision. *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). Nothing in the regulations or case law, however, precludes an ALJ from assigning great weight to the opinion of a state agency medical consultant. Nor does the fact that the reviewing physicians' rendered opinions before other medical records became available necessarily preclude an ALJ from assigning great weight to their opinions. *Kohn v. Colvin*, No. C12-4003-MWB, 2013 WL 5375415, at *13 n.5 (N.D. Iowa Sept. 26, 2013) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.") (citation and internal citation marks omitted).

Importantly, the ALJ considered the medical record as a whole, and her assessment of the state agency reviewing physicians' opinions was just a part of that review. An ALJ does not err when she considers the opinion of a state agency medical consultant, along with the medical evidence as a whole, in reaching her decision. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [a state agency reviewing physician] along with the medical evidence as a whole."). Therefore, although the opinions of the state agency reviewing physicians could not, by themselves, constitute substantial evidence to support the ALJ's decision, the ALJ's

consideration of those opinions, along with all the other medical evidence, does not detract from the substantial evidence supporting the ALJ's decision.

Accordingly, I find the ALJ did not err in assigning great weight to the state agency reviewing physicians' opinions.

### B. The ALJ's Evaluation of Claimant's Subjective Complaints

Claimant argues the ALJ erred in discrediting claimant's subjective complaints. Doc. 13, at 8-14. Claimant argues the "ALJ must make an express credibility finding regarding *all* of the claimant's allegations." Doc. 13, at 9 (emphasis in original). Claimant argues the ALJ also mischaracterized the evidence in making her credibility findings. *Id*. Claimant also asserts it was "an error of both law and fact" when the ALJ found the "severity of impairments was the same as before her onset date but did not stop her from working." *Id.*, at 10. Claimant alleges the ALJ erroneously found claimant was not credible because claimant "failed to follow up with treatment because she did not quit smoking." *Id.*, at 11. Finally, claimant argues the ALJ erred by not including in the RFC assessment all of claimant's subjective limitations. *Id.*, at 12-13. The Commissioner, of course, argues the ALJ properly assessed claimant's credibility. Doc. 14, at 15-18.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (citation omitted). Accordingly, a court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*,

222 F.3d 448, 452 (8th Cir. 2000). In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). "An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole." *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2009) (citations omitted). The ALJ does not need to discuss each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citations and internal quotation marks omitted).

In this case, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible . . .." AR 28. The ALJ did not make an express credibility finding with regard to all of claimant's subjective allegations, but the ALJ was not obligated to do so. Claimant cites *Ricketts v. Sec'y of Health & Human Servs.*, 902 F.2d 661 (8th Cir. 1990) for the proposition that an "ALJ must make an express credibility finding regarding **all** of the claimant's allegations." Doc. 13, at 9 (emphasis claimant's). That is not the holding of *Ricketts*, however. Rather, in *Ricketts*, the court remanded the case and instructed the ALJ to "compare all Ricketts' impairments, including credible subjective complaints, with the demands of operating an elevator in determining whether Ricketts can perform his past work." *Ricketts*, 902 F.2d at 664. The *Ricketts* Court did not announce a rule

19

that ALJs must expressly make a credibility finding on each and every subjective complaint.

The ALJ properly considered the fact claimant continued to work despite her longstanding conditions in assessing her credibility. It is true that an ALJ could consider a claimant's efforts to continue to work as enhancing the claimant's credibility. *See*, *e.g.*, *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (declining to see how claimant's participation in vocational rehabilitation after injury undermined her credibility or "show[ed] anything other than a good-faith attempt to return to work"); *Burnside v. Apfel*, 223 F.3d 840, 845 (8th Cir. 2000) (finding that solid work record and seeking clearance from physician to return to work supported credibility of claimant's subjective complaints).[5] On the other hand, the fact a claimant worked despite impairments may also be seen as indicating the claimant is not as disabled as alleged. *See*, *e.g.*, *Van Vickle*, 539 F.3d at 830 (ALJ may discount credibility if claimant continues to work despite alleging disabling limitations); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (finding the ALJ's decision to discount credibility of claimant's subjective complaints valid in part because claimant continued to work despite impairments); *Dixon v. Sullivan*, 905 F.2d 237, 238-39 (8th Cir. 1990) (upholding ALJ's credibility finding based in part on the fact claimant continued to work despite alleged impairments and lost his job only because of his use of marijuana and not because he could not perform the job).[6] Ultimately, this is within the zone of choice afforded an ALJ to determine whether work

---

[5] Claimant cited *Lanes v. Harris*, 656 F.2d 285 (8th Cir. 1981), *Milton v. Schweiker*, 669 F.2d 554 (8th Cir. 1982), and *Northcutt v. Califano*, 581 F.2d 164 (8th Cir. 1978), in support of this proposition. Doc. 13, at 10-11. I do not find those cases support claimant's argument, so have relied on my own research in this regard.

[6] The Commissioner cited *Gowell v. Apfel*, 242 F.3d 793 (8th Cir. 1996) to support this proposition. I do not find this opinion supports the proposition and so did not rely upon it.

history supports or detracts from a claimant's credibility and it is not for this Court to second guess that assessment where there are, as here, adequate grounds for the ALJ to reach that credibility conclusion.

The ALJ also did not err in considering claimant's failure to stop smoking in assessing her credibility. Claimant cites *Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984), for the proposition that noncompliance is a bar from benefits only for claimants who fail to treat a remedial condition, and argues that nothing in the record suggests her conditions were remedial if she quit smoking. Doc. 13, at 11. The Commissioner argues that "[d]isability benefits are not payable when individuals ignore their doctors' advice to stop harmful habits." Doc. 14, at 17. Both parties miss the point. The ALJ did not find claimant was barred from benefits because she failed to stop smoking. Rather, the ALJ found claimant's failure to stop smoking, despite repeated instructions from medical providers that it impacted her treatment, as detracting from her credibility. This is permissible. *See*, *e.g.*, *Mouser*, 545 F.3d at 638 (the ALJ appropriately considered claimant's failure to stop smoking in making his credibility determination); *Strickland v. Barnhart*, 143 Fed. App'x 726, 726 (8th Cir. 2005) (same) (unpublished); *Wheeler*, 224 F.3d at 895 (finding it proper for ALJ to consider claimant's continued smoking, despite doctor's orders to stop, in assessing credibility); *but see* *O'Donnell v. Barnhart*, 318 F.3d 811, 819 (8th Cir. 2003) (failure to stop smoking does not show claimant's complaints of disabling pain are not credible where the record shows claimant participates in physical therapy, nerve epidural blocks, medication, and other procedures to reduce pain).

Finally, claimant's complaint that the ALJ did not incorporate all of her subjective complaints into the RFC assessment is unavailing. An ALJ "is not required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary" to the law. *Molina v. Astrue*, 674 F.3d 1104,

1112 (9th Cir. 2012) (quotation and internal quotation marks omitted). *See also Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (holding "the ALJ was not required to believe all of [claimant's] assertions concerning those daily activities."). In the end, it is not for a reviewing court to disturb an ALJ's credibility finding where it is clear the ALJ has considered the record and has articulated good reasons for it. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) ("We will not disturb the decision of an [administrative law judge] who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain." (quoting *Browning*, 958 F.2d at 821) (alterations in original)).

Accordingly, I find the ALJ did not err in assessing claimant's credibility.

## VI.  CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 17th day of January, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa